IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
BAXTER INTERNATIONAL, INC.   )
                             )
          Plaintiff,         )
                             )
     v.                      )   No. 11 C 9131
                             )
AXA VERSICHERUNG AG,         )
                             )
          Defendant.         )
```

MEMORANDUM OPINION AND ORDER

AXA Versicherung AG ("AXA") has moved for entry of an order approving security in the amount of $5,725,489. Baxter International, Inc. ("Baxter") argues that this amount will not be sufficient to secure payment of any judgment that might be entered in this case.

For the reasons stated below, I deny AXA's motion and order AXA to post $15 million in security within fourteen days from entry of this order.

I.

In its complaint, Baxter alleges that an insurance policy on which AXA is the "Lead Insurer" covers the defense and settlement costs for claims arising from the use of contaminated blood products. Baxter seeks coverage only for losses relating to claimants who used a blood product

1

distributed by the Immuno Group, which Baxter acquired in 1996, and were later infected with Hepatitis C.

AXA contends that Baxter's losses are not covered under the policy.

## II.

The Illinois Insurance Code requires an unauthorized foreign company, such as AXA, to register with the state or post pre-judgment security "in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in [this] action." 215 ILCS 5/123(5).

The parties disagree about the maximum recovery available to Baxter in a suit against only the Lead Insurer. AXA contends that any monetary judgment entered in this action cannot exceed AXA's share of the underlying policy (i.e., 47.41 percent). To the extent Baxter seeks reimbursement for defense or settlement costs exceeding AXA's share of the policy, AXA argues that Baxter must sue the other participating insurers.

Baxter counters that it may sue only AXA for breaching the underlying policy and therefore must be able to recover the full amount owed under the policy in this litigation.

### A.

This dispute requires me to interpret three provisions concerning AXA's role as the "Lead Insurer" on a policy with

2

four "participating insurers." The policy specifies that German law applies to contractual disputes, so the following provisions must be construed under German law.

1. The participating [i]nsurers acknowledge all decisions by the Lead Insurer to be legally binding for them. The companies are subject to several liability in proportion to their shares of the policy.

2. The Lead Insurer alone is the litigating party and the party authorized to conduct litigation in legal disputes arising from this insurance policy. The participating companies acknowledge that final decisions in favor [of] or against the Lead Insurer, and settlements reached by the Lead Insurer after a complaint has been filed, are legally binding for them. Litigation costs are borne by the participating insurers on a pro rata basis.

3. Legal actions may be limited to the Lead Insurer's share. At the request of one of the participating [i]nsurers, the Policyholder is obligated to include in the complaint, before filing legal action, as many shares as is necessary for reaching the jurisdictional amount on appeal.

Dkt. No. 1-1 at 67, 69.

I have little trouble concluding that Baxter may sue AXA alone for the full amount owed under the policy. AXA's argument that Baxter must sue each participating insurer for its share of the policy ignores AXA's role as the only contractually designated litigating party: "The Lead Insurer *alone* is the litigating party and the party authorized to conduct litigation in legal disputes arising from this

3

insurance policy." Dkt. No. 1-1 at 67 (emphasis added). Baxter must be able to recover the full amount owed under the policy during litigation against the only possible defendant. Anything less would leave Baxter in a trap where it could sue only AXA and recover only AXA's share of the policy.

The policy states twice that any settlement or judgment in this litigation will be binding on the participating insurers. AXA argues that Baxter could use a binding coverage determination in this case to collect directly from participating insurers. This argument fails because AXA is the only litigating party; hence, Baxter cannot sue the participating insurers directly. Moreover, AXA ignores the possibility that a settlement in which AXA fails to admit that Baxter's losses are covered would not bind the participating insurers to anything even if Baxter had the power to sue them. A settlement or judgment will bind the participating insurers only if Baxter's suit against AXA is for the full amount owed under the policy.

AXA's argument is also at odds with the policy provision stating that Baxter's suit "may be limited to the Lead Insurer's share." Dkt. No. 1-1 at 69. The parties logically would have used the word "must" rather than "may" if Baxter were required to sue each participating insurer

4

for its share of the policy.  The most natural reading of the provision quoted above is that Baxter may choose to limit its suit to AXA's share of the policy, but need not do so.[1]

Allowing Baxter to sue AXA for the full amount owed under the policy does not subject AXA to joint and several liability, which would be in tension with policy language stating that the co-insurers are "subject to several liability in proportion to their shares."  Dkt. No. 1-1 at 67.

A German appellate court has held that a lead insurer sued for the full amount owed under a policy where each co-insurer is subject only to several liability "must be regarded as the obligor for the risk shares of the co-insurers"; however, "this does not mean that Defendant is now subject to joint and several liability together with the other co-insurers."  *OLG Breman [Court of Appeals of Breman]* Jan. 13, 1994, Case No. 2 U 104/93, VersR 1994, 709 (Ger.).  Thus, under German law, AXA can be sued for the full amount owed under the policy, but it does not follow that AXA is

---

[1] The only circumstance in which Baxter may <u>not</u> limit its suit to AXA's share of the policy is when a participating insurer requests that its share be "include[d] in the complaint" in order to satisfy a "jurisdictional amount in controversy."  Dkt. No. 1-1 at 69.  Neither party elucidates the meaning of this provision.

5

therefore being subjected to *de facto* joint and several liability.  Baxter also stipulates that should any share of a judgment against AXA be uncollectible by AXA because a participating insurer is insolvent, Baxter will repay (or refrain from collecting from AXA) that portion of the judgment.  This stipulation provides additional protection for AXA against the risk of *de facto* joint and several liability.

AXA cites one German case for the proposition that a lead insurer arrangement is intended to reduce costs and simplify handling of legal disputes.  *OLG Cologne [Court of Appeals of Cologne]* Sept. 2, 2008, Case No. 9 U 151/07D, r+s 2008, 468 (Ger.).  This general proposition undermines AXA's proposal for serial litigation by Baxter against each participating insurer because AXA's approach would actually increase costs and complicate handling of this dispute.

The *OLG Cologne* case further undermines AXA's proposal for serial litigation because the court strictly enforced a so-called "litigation clause" against an insured in roughly the same position as Baxter:

> This litigation clause does not only create a right but also an obligation for the insured to sue only the leading party in case of a dispute. This is a *pactum de non petendo* [an agreement not to sue] that results in complaints against the co-insurer(s) being denied if they invoke this clause.  This is the situation here.

6

*Id.* A suit by Baxter against one of the participating insurers would presumably be dismissed on similar grounds because AXA is the only litigating party. Thus, the *OLG Cologne* case provides additional support for my conclusion that Baxter's only option is to sue AXA for the full amount owed under the policy.

B.

In its complaint, Baxter alleges that it has incurred "almost $12 million in defense costs fairly attributable to Immuno products and covered under the AXA Policy" and "millions of dollars in settlements paid or to be paid" to claimants allegedly infected with Hepatitis C in connection with using a contaminated blood product.

Baxter now estimates that it has incurred $15.8 million in recoverable losses and argues that AXA should be ordered to post a bond of at least $15 million to secure payment of a possible judgment in this case.

AXA cites no cases holding that the specific losses alleged in Baxter's complaint (i.e., $12 million) impose a ceiling on how much security AXA can be ordered to post. The operative language in the statute is "an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in [this] action." 215

ILCS 5/123(5). This language confers considerable discretion on district courts. *See Intl. Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 401 (7th Cir. 2002). I find based on the best information available that security in the amount of $15 million will be sufficient to secure any final judgment in this case.

IV.

AXA's motion to post security in the amount of $5,725,489 is DENIED for the reasons stated above. I hereby order AXA to post $15 million in security within fourteen days from entry of this order.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 17, 2013