**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BAXTER INTERNATIONAL INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-cv-9131 |
| vs. ) | |
| ) | Honorable Elaine E. Bucklo |
| AXA VERSICHERUNG AG, ) | Honorable Jeffrey T. Gilbert |
| ) | |
| Defendant. ) | |
| _____ ) | |

## AXA VERSICHERUNG'S MOTION TO COMPEL
## BAXTER INTERNATIONAL TO PRODUCE AON DOCUMENTS

Defendant AXA Versicherung AG moves the Court, pursuant to Rule 37 and this Court's

Order (D.E. # 287), to compel Plaintiff Baxter International Inc. to produce communications

with third-party Aon that it is currently withholding from production. In support thereof, AXA

Versicherung states:

**I.      Introduction.**

This case concerns a 1990 insurance policy (the "Policy") that AXA Versicherung's

predecessor-in-interest Colonia AG (collectively, "AXA Versicherung") issued to Immuno

Group, a European pharmaceutical company acquired in 1996 by Baxter International

(collectively, "Baxter"). The parties dispute the meaning of certain provisions in the Policy, the

timeliness of Baxter's notice of loss, and Baxter's allocation of its losses among various insurers.

Aon (collectively, with its predecessor Jauch & Hübener, "Aon") served as Baxter's

insurance broker during most of the relevant time period, procuring the Policy in 1990, and the

endorsements thereto from 1994 to 2001. (See, e.g., "Jauch & Hubener" letterhead on D.E. # 1-

1.) As is typical of insurance brokers, Aon also performed claim advocacy services by

consulting with Baxter and liaising with Baxter's insurers in an effort to maximize Baxter's insurance recoveries. (Ex. A, Baxter Dep. 42:25 – 45:17.)[1]

In an attempt to ascertain how Baxter and its broker construed the terms of the Policy at the time Aon procured the Policy and its endorsements, AXA Versicherung requested from Baxter copies of the Aon Policy placement documents. Furthermore, in an effort to ascertain when, how and why Baxter allocated the losses among its various insurers, and why Baxter appears to be seeking a disproportionate sum under the Policy, AXA Versicherung sought copies of Aon claim advocacy documents concerning the loss at issue. In response, Baxter produced only a handful of Aon documents, withholding approximately 250 communications between 1990 and 2010 and an undisclosed number of communications after 2010. Baxter contends that these documents are shielded from production by the attorney-client privilege and, to a lesser extent, the work product doctrine. Even though Aon was Baxter's broker, and Baxter was counseled by German insurance lawyers at the Lovells law firm, Baxter contends that it and/or its counsel also retained Aon to assist outside counsel in rendering legal advice to Baxter. (See Baxter Dep. 30:22 – 32:8; Ex. B, Baxter privilege log.) Baxter memorialized its engagement of Aon as its broker in written agreements; Baxter did not memorialize its alleged engagement of Aon as a consultant retained to assist its outside counsel in advising Baxter.

Baxter contends, for purposes of its privilege assertion, that Aon was both its own agent and its attorney's agent throughout the relevant time period. Baxter testified at its Rule 30(b)(6) deposition on Baxter's efforts to obtain Aon documents.[2] Baxter testified that it has made no

---

[1] From Aon's website: "We support your continuity and resilience goals and maximize the return on your insurance investment with effective claims advocacy." http://www.aon.com/risk-services/claims-consulting.jsp

[2] The first matter for examination listed in the Rule 30(b)(6) deposition notice was, "All requests by Baxter or Immuno to Aon for documents concerning the Second Generation Litigation or the Immuno Policy, Aon's responses thereto, and the location of any documents Aon provided in response to any such request." (Ex. C.)

effort since this case commenced to obtain any documents concerning the Policy from Aon, but that it visited Aon's offices three times (1996, 2004 and 2010) and reviewed and copied all Aon documents concerning the Second Generation Litigation and the Policy. (See Baxter Dep. 134:18 – 137:8, 152:12 – 153:6, 164:17-24, 165:20-24, 181:25 – 182:25, 185:17-23; Ex D at Document Request Answer #2.) Based on this testimony, AXA Versicherung concluded that there was no need to seek to compel Baxter to secure responsive documents from Aon. However, on September 25, 2015, Baxter's counsel submitted a 10 page errata sheet, in which Baxter changed its testimony concerning securing its agent Aon's documents. Baxter's new testimony is that during its 2010 review of Aon files, when it asserts (in its privilege log) that it was anticipating this litigation, it did not review or copy *any* Aon documents concerning the Policy. (See Baxter errata sheet for the transcript excerpts cited above at Ex. A, including entry "Page 152" – "The review of Aon documents in 2010 had nothing to do with the 1990 policy issued by AXA.")

Based on Baxter's change in testimony, it may be necessary for AXA Versicherung to ask this Court to compel Baxter to secure and produce additional Aon documents concerning the Policy. However, it appears that many of the responsive documents one would expect Aon to possess are on Baxter's privilege log, so for now AXA Versicherung focuses its efforts on the log, in the expectation that seeking additional Aon documents will not be necessary. Nevertheless, AXA Versicherung reserves its right to ask this Court, at a later date, to compel Baxter to secure and produce additional documents from Aon, or hold Baxter to account for failing to do so.

## II.     None of the Baxter – Aon Communications is Privileged.

### A.     Baxter Bears the Burden of Establishing that a Privilege Applies to Each Document it is Withholding.

Because the assertion of an attorney-client privilege is antithetical to the discovery process and the search for truth, the privilege must be "strictly confined within the narrowest limits possible." *Waste Mgmt. Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 190 (1991); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).  The party asserting the privilege bears the burden of establishing facts that satisfy all the elements of the asserted privilege. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119 (1982).  The proponent of the privilege must demonstrate that the communication in question:  "[1] originated in a confidence that it would not be disclosed, [2] was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and [3] remained confidential." *Consolidation Coal*, 89 Ill. 2d at 119.  Furthermore, corporations asserting the privilege must establish that any non-attorney corporate agent involved in the communication was within the corporation's "control group."  A key employee, whose "advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within this control group.  However, the individuals upon whom he may rely for supplying information are not members of the control group." *Id.* at 120.

The mere fact that someone is an attorney "does not create a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client."  *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980).  The privilege does not cover "confidential communications with a lawyer about business

or other non-legal matters." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). When an attorney-client communication concerns both legal and business advice, the communication is not privileged unless the legal advice predominates. *Ohio-Sealy Mattress Mfg. v. Kaplan*, 90 F.R.D. 21, 34 (N.D. Ill. 1980).

As a general rule, an attorney's or client's communications with a third party are not privileged. *Evans*, 113 F.3d at 1462 ("[T]he presence of such a third party defeats the privilege even though the client may harbor a desire for confidentiality because the privilege 'goes no further than is necessary to secure the client's subjective freedom of consultation.' " (quoting Wigmore)); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013); *see also* Gergacz, Attorney-Corporate Client Privilege (West. 2015) § 3:64 at 354-55. One exception to this rule is where the attorney or client retains and *needs* the third party to assist the attorney in rendering legal advice to the client. *Lawrence E. Jaffe Pension Plan v. Household Int'l*, 244 F.R.D. 412, 420 (N.D. Ill. 2006). Where the third party's role in advising the client is primarily for business/non-legal purposes, no attorney-client privilege will attach to such communications regardless of whether an attorney was involved in the communications. *Evans*, 113 F.3d at 1463.

One of the most important factors courts consider in ascertaining whether a third party was engaged for purposes of assisting counsel in rendering legal advice or for business purposes is whether the third party was retained by the party's outside counsel, or the party itself. The former arrangement makes privilege more likely; the latter arrangement makes privilege less likely. *See generally*, Epstein, The Attorney-Client Privilege and Work Product Doctrine (ABA 5th ed.) at 218; Gergacz, Attorney-Corporate Client Privilege § 3.66 at 385-87; Rice, Attorney-Client Privilege in the United States (Thompson Reuters 2014) § 3.3 at 133-35 ("Before [specialists] will be classified as agents of the attorney…many courts insist that they have been

retained by the attorney and it be shown that their assistance was important to the legal services being rendered.").

It is incumbent upon the party asserting the privilege over third party communications to establish the terms of the retention; that is, that the retention was for purposes of assisting the attorney in rendering legal advice. *Evans*, 113 F.3d at 1464. Without a mutual understanding between a party and its counsel on one side, and the third party on the other, the party can have no reasonable expectation that its communications with the third party will be kept confidential and used solely to assist in the rendering of legal advice. *See, e.g.*, *Stenovich v. Wachtell, Lipton*, 756 N.Y.S.2d 367, 379 (Sup. Ct. 2003) (rejecting a privilege claimed over communications with third parties because the party merely assumed the third parties would and did keep the communications confidential). A third party acting on behalf of an attorney must satisfy traditional agency requirements, or its participation in a communication will destroy any privilege that might otherwise attach. *Henderson v. Nat'l R.R. Passenger Corp.*, 113 F.R.D. 502, 509 (N.D. Ill. 1986).[3] Courts should be particularly wary of a party's assertion of privilege over communications with a consultant that it previously hired to render similar, non-legal services. *See Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) ("[W]hen the client has previously employed the agent independent of the attorney-client relationship, to perform the same services that he will perform for the attorney, this creates a risk that the agent's retention by the attorney is simply a subterfuge." (quoting Rice, Attorney-Client Privilege in the United States (1999) (punctuation omitted)).

---

[3] "First, an agent must have the power to affect the legal relations of the principal and others. Next, the agent is a fiduciary who works on behalf of the principal and primarily for his benefit. Last, the principal has the right to control the conduct of the agent." *Henderson*, 113 F.R.D. at 509.

**B.      Baxter Retained Aon Primarily for Insurance Broking
and Claim Advocacy Purposes.**

Baxter contends that its counsel retained Aon from approximately 1990 through 2010, and that Baxter directly retained former Aon employee Adolph Riedel from 2010 through 2012, to assist counsel in rendering legal advice to Baxter.  (See Ex. E at pp. 2-3 ("Baxter's lawyers…retained [Aon] to provide analysis…"; "Baxter lawyers therefore once again retained Aon to assist them…"; "Baxter…retained Mr. Riedel separately to continue providing Baxter's lawyers with counsel and assistance….").)  But the facts show otherwise.

**i.      Baxter Had No Retention Agreement with Aon Prior to 2003.**

Aon was Immuno's insurance broker in the 1990s, and as such procured the Policy in 1990 and endorsements thereto from 1996 to 1998.  (See D.E. #1-1; Baxter Dep. 25:15 – 26:7.) And while Baxter contends that its counsel also separately retained Aon to assist counsel in rendering legal advice to Baxter, it cannot produce any retention agreement prior to 2003 or identify the terms of the alleged agreement. (Baxter Dep. 27:5-15.)  Undoubtedly, this is because there was no agreement between Baxter's counsel (or Baxter itself) and Aon concerning Aon assisting in rendering of legal advice. In fact, when Baxter and Aon finally did enter into a written agreement in 2003, the parties acknowledged that the services Aon had been providing and would continue to provide Baxter were typical broker services.  (See Ex. F ("You asked us to provide our services as an insurance broker…so as to handle claims.").)

Baxter has not carried its burden of establishing that it or its counsel retained Aon prior to 2003 for purposes of rendering legal advice. This Court should reject all of Baxter's assertions of privilege concerning Aon communications created prior to 2003.

### ii.     Between 2003 and 2010, Baxter Expressly Retained Aon Solely to Provide Broker Services.

Although Baxter cannot establish the terms of its retention of Aon prior to 2003, it can and has established the terms of the retention after February 2003.  And what Baxter has established is that it used Aon strictly as a broker.  In February 2003, Aon and Baxter entered into a written agreement, whereby the parties confirmed that Baxter had "asked [Aon] to provide [its] services as an insurance broker for third party liability policies prior to 1990, so as to handle claims in connection with possible claims for compensation arising from HIV/HCV-injuries in Italy."  (Ex. F.)  Baxter later expanded Aon's broker role beyond the Italian claims and adjusted Aon's compensation, but kept the other terms of the Aon engagement the same, which was "to maximize our insurance recovery."  (Baxter Dep. 82:20 – 84:15; Ex. G.)

In January 2006, Baxter and Aon restated and confirmed that Baxter's retention of Aon was for traditional broker services, including claims advocacy vis-à-vis insurers such as AXA Verischerung.  The 2006 engagement letter from Aon to Baxter states,

> You asked me to provide Aon Jauch & Hubener services as an Insurance Broker for third party liability policies of Immuno AG prior to 1990 so as to handle claims in connection with possible liability claims. This will include the overall coordination between Baxter, the lawyers and the former insurance companies. (Ex. H.)

Baxter's risk manager (and non-attorney), Donald Sullivan, accepted the terms of the Aon engagement set forth in this letter without modification.   (Baxter Dep. 77:15-19, 98:2-12.)  Importantly, this agreement confirms that Aon was not assisting Baxter's attorneys, as Baxter now contends, but rather, it was the other way around – Aon was the one coordinating the claims advocacy efforts on behalf of Baxter, at times being assisted by Baxter's attorneys.  That Aon was not an agent of Baxter's counsel and was not assisting counsel in rendering legal advice is further evidenced by the fact that Aon did not consult with Baxter's counsel prior to sending the

new engagement letter directly to Baxter. In fact, in 2006 Aon expressly declined to discuss the terms of its Baxter engagement with Baxter's outside counsel because "there have not been many activities for the US class action case yet." (Ex. I.) Because Aon's primary, if not only, work for its client Baxter comprised non-legal claims advocacy services, it was engaged directly by, took instructions directly from, and reported directly to, the Baxter business unit responsible for handling insurance.

In April 2006, Mr. Sullivan wrote Aon directly, without copying Baxter's counsel, to state,

> [I]t seems appropriate to renew, broaden and clarify at this time the terms of your consultancy arrangement with Baxter as we continue our attempts to access insurance coverage secured by Immuno prior to the acquisition.

> As you know, I have been charged with the task of marshaling all of Baxter's insurance assets (including those of predecessor companies, such as Immuno.) I look to you, in turn, to advise and assist me in maximizing, for Baxter's benefit, the insurance that Immuno purchased in the past. In that regard, it is crucial that you keep me advised on a "real-time" basis whenever you learn of any factual or insurance-related developments affecting Baxter, no matter the source. Even if you think that I may have already been informed about a particular development from another source (from the Lovells firm or from Corinna, for example), I would still appreciate hearing about that development from you as well (an email would be fine) so that I can benefit from your perspective and experience. (Ex. J at 3)

Mr. Sullivan did *not* instruct Aon to take direction from, or assist, outside counsel. Aon responded to Mr. Sullivan, without copying Baxter's outside counsel, confirming that Aon would report directly to Mr. Sullivan on its claims advocacy efforts. (Ex. J. at 1) During its Rule 30(b)(6) deposition, Baxter labored mightily to distance itself from its own words, in an attempt to retroactively convert Aon from a broker offering procurement and claims advocacy services, into an expert retained by its outside counsel to assist in the rendering of legal advice. But this letter clearly expresses Baxter's intention that its insurance broker advocate on its behalf with its

insurers and advise it directly on the progress the broker was making in this regard. This quintessential broker/business consulting lasted until 2010. (Baxter Dep. 136:24 – 137:11.)

Baxter cannot establish any engagement other than Aon as a mere insurance broker. And the correspondence between Aon and Baxter demonstrate that Aon was, in fact, providing the very broker services Baxter asked it to provide. Certainly, Baxter has not carried its burden of establishing that it retained Baxter for purposes of assisting counsel, in confidence, in rendering legal advice. This Court should reject all of Baxter's assertions of privilege concerning Aon communications created between 2003 and 2010.

### iii)     Aon Had No Agreement with Mr. Riedel.

Baxter's primary contact at Aon, Adolf Riedel, retired in 2010 but continued to communicate with Baxter concerning the Policy. Baxter has asserted attorney-client privilege over an undisclosed number of its post-2010 communications with Mr. Riedel. Baxter did not individually log these documents, but rather group categorized them as, "Correspondence between Baxter's counsel and Adolf Riedel (after his retirement from J&H/Aon) relating to the analysis and presentation of HCV claims for coverage under the policies issued by Colonia/AXA to Immuno."

Baxter contends that it had a written consulting agreement with Mr. Riedel, but it can neither produce that agreement nor provide the terms of the missing agreement. (Baxter Dep. 138:8-24.) Baxter did not ask Mr. Riedel for a copy of this mystery agreement. (Baxter Dep. 124:10-25, 137:11 – 138:7.) Baxter does not know whether Mr. Riedel billed Baxter for any consulting services or whether Baxter paid for such services. (Baxter Dep. 122:24 – 123:8.) Baxter does not even know whether Mr. Riedel remains a Baxter consultant today. (Baxter Dep. 185:24 – 186:9.) At most, it appears that, upon his retirement, Mr. Riedel continued to provide

10

the same claim advocacy services to Baxter that he provided before retiring from Aon. Because Baxter has not established even the existence of an engagement agreement with Mr. Riedel, much less the terms of any such agreement, it has failed to carry its burden of establishing the elements of an attorney-client privilege over the Riedel communications.

### C. Aon Was Never Within Baxter's Control Group.

Baxter's CFO, along with its GC and other upper management, made insurance decisions for Baxter regarding the loss at issue in this case. These decision makers were advised by Baxter's risk manager, Mr. Sullivan, who in turn was advised by others, including brokers like Aon. During the relevant time period, Aon did not communicate with the CFO or other insurance decision makers at Baxter, and therefore were not part of Baxter's control group. (Baxter Dep. 109:14-24, 118:10-19, 187:11-14); *Consolidated Coal*, 89 Ill. 2d at 120 (Those who supply information to another, who in turn advises the decision maker, are not within control group). Because Aon was never within Baxter's control group, the attorney-client privilege never attached to Baxter's communications with Aon.

### D. Aon Cannot Assert Work Product Protection Prior to the Mid-2000s, or for Claim Advocacy.

The work product doctrine protects against discovery of "documents or tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The party invoking the doctrine bears the burden of establishing its applicability to particular documents. *Patrick v. City of Chicago*, --- F. Supp. 3d ----, 2015 WL 3989152, at *5 (N.D. Ill. July 1, 2015). Documents created by a party or its representative in the ordinary course of business, and not specifically for litigation, even if litigation eventually ensues, are not protected from discovery. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996).

Work product must be primarily legal in nature to be privileged. *See Burden-Meeks*, 319 F.3d at 899. Non-legal business evaluations, reports, and data do not enjoy privilege merely because they are completed by counsel, at the direction of counsel, or for delivery to counsel. *Id.*; *Binks Mfg. Co. v. Nat'l Presto Indus.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (Memoranda prepared by counsel were not protected by work product doctrine where party "failed to meet its burden of proving that the memoranda were prepared because of the prospect of litigation.").

Baxter is not withholding many Aon documents on work product grounds, for good reason. As shown above, any documents Aon created or received were for use outside of court in Aon's procurement and/or claim advocacy on behalf of Baxter. Furthermore, Baxter did not anticipate litigation with AXA Versicherung until the mid-2000s at the earliest. (Baxter Dep. 88:7 – 89:5; 133:14 – 134:9, and 152:12 – 53:19, including errata sheets for these excerpts.) Thus, the work product doctrine can have no application to documents created in the 1990s.

Surprisingly, Baxter asserted work product protection over communications it had with Aon in March 1990, when Aon procured the Policy, and in 1998, when Aon procured endorsements to the Policy. Apparently, Baxter would have this Court believe it anticipated litigation with AXA Versicherung concerning the Policy while Aon was procuring the Policy! AXA did not anticipate litigation with AXA Versicherung until the mid-2000s at the earliest. And any communications with Aon were to assist in claim advocacy, not litigation. This Court should reject all Baxter assertions of work product protection.

III. **Baxter Must Produce any Documents Created for Purposes of Procuring Insurance or Advocating Claims.**

In the event this Court finds, despite the evidence to the contrary, that Baxter has carried its initial burden of establishing that some of Aon's communications may have been confidential

and for purposes of assisting counsel in rendering legal advice, then it should conduct *in camera* review of the Aon documents listed below.

In conducting the *in camera* review, this Court should be guided by a leading Illinois case on assertions of privilege over insurance broker communications: *Allianz Underwriters v. Rusty Jones*, 1985 WL 5114 (N.D. Ill. Dec. 31, 1985). The court in that case reviewed the defendant's insurance broker's assertion of attorney-client privilege over communications between the defendant and its counsel that were given to the broker "during the course of 'provid[ing] assistance to [defendant] in attempting to resolve disputes that arose between it and Plaintiff, which are the subject of this action.'" *Id.* at *2. The court ordered the broker to produce attorney-client communications that were "for the purpose of aiding [the broker] in its attempt to help [the defendant] resolve this dispute [with its insurer], a purpose unrelated to seeking legal advice or protecting a legal interest." *Id.* at *3. The court also ordered the broker to produce other communications involving an employee who fell outside the control group, preventing the attorney-client privilege from attaching. *Id.*

As found by the court in *Allianz Underwriters*, broker communications with a client and/or its attorney that were for purposes of furthering broker claim advocacy, or that were shown to low- to mid-level employees of the broker, are not privileged. This Court should view Baxter's Aon documents through a similar prism, particularly where it is clear that Aon conducted claim advocacy for Baxter and that several low- to mid-level Aon employees were involved in the communications with Baxter and its counsel. (See Ex. K (Baxter list of "privileged document" recipients includes several Aon employees other than Mr. Riedel).)

Baxter has listed hundreds of Aon/Riedel documents on its privilege log, several of which are in German. It is not practical for this Court to review that many documents *in camera*.

13

Therefore, in the attached exhibit L, AXA Versicherung has identified a subset of the Aon documents that it asks this Court to review if necessary. Exhibit L provides the Baxter log entry number and a short description of why AXA Versicherung believes the particular document merits close inspection by this Court. AXA Versicherung has highlighted the corresponding Baxter description of the challenged document in Baxter's privilege log at Exhibit B.

AXA Versicherung respectfully requests that this Court pay particular attention to communications concerning:

- The policies Baxter had in place or could obtain (procurement facts not privileged);

- The presentment of claims and related arguments by Aon to insurers (claim advocacy not privileged);

- Allocating losses among insurers outside of litigation (claim advocacy not privileged);

- Aon coverage analysis provided to Baxter and/or Baxter's counsel (advice *from* the non-attorney third party *to* a party or its counsel is not privileged, *see In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (legal advice must be obtained "*from the lawyer*").

- Aon summaries of meetings attended by, or letters received by, Baxter and/or its counsel (counsel had no need for such assistance from Aon in order to render legal advice concerning a meeting he or the client attended or a document he or the client could read themselves).

- Baxter has not individually logged the 2010 – 2012 Riedel documents, so AXA Versicherung cannot object to individual documents from this time period. But Baxter's categorical description of these documents, coupled with the nature of its relationship

with Mr. Riedel, demonstrate that Baxter has failed to carry its burden to establish that these documents are privilege.

## IV. Conclusion

Baxter has produced no engagement agreement governing its relationships with Aon prior to 2003 or with Mr. Riedel from 2010 to 2012. Baxter has produced engagement agreements governing its relationship with Aon from 2003 to 2010, and those agreements demonstrate that Aon functioned as Baxter's broker, not as an expert retained to assist counsel. Further, because Aon was never within Baxter's control group for making decisions about insurance or presenting losses to insurers, the attorney-client privilege never attached to Baxter's communications with Aon. Finally, Baxter did not anticipate this litigation until the mid-2000s at the earliest, therefore it cannot correctly claim work product in any of the Aon documents prior to then. In any event, Aon created and was given documents not for litigation purposes, but to further its own claim advocacy with the insurers. This Court should order Baxter to produce all the Aon documents that Baxter withholds.

Dated: October 2, 2015

Respectfully submitted,

/s/ John M. O'Bryan
One of Its Attorneys

Joseph T. McCullough IV
John M. O'Bryan
Robert M. Baratta, Jr.
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

*Attorneys for AXA Versicherung AG*

## <u>CERTIFICATION OF GOOD FAITH CONFERRAL</u>

Counsel for Defendant AXA Verischerung has conferred in good faith with counsel for Plaintiff Baxter International in an effort to obtain the Aon documents without court action.


Dated: October 2, 2015                                        /s/ John M. O'Bryan

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing AXA Versicherung AG's **Motion to Compel Baxter International to Produce Aon Documents** was served on all counsel of record via the Northern District of Illinois, Eastern Division, ECF filing system, this 2d day of October, 2015.

Nader R. Boulous, P.C.
William T. Pruitt
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Carl W. Shapiro
Teresa Z. Youhanaie
SHAPIRO, RODARTE & FORMAN LLP
233 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401

Dated: October 2, 2015                                    /s/ John M. O'Bryan

3456934v4/27608-0003

17