IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL INC., | ) Case No. 11-cv-9131 |
| Plaintiff, | ) |
| vs. | ) Honorable Elaine E. Bucklo, D.J. |
| AXA VERSICHERUNG AG, | ) Honorable Jeffrey T. Gilbert, M.J. |
| Defendant. | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO AXA'S MOTION
TO COMPEL BAXTER TO PRODUCE AON COMMUNICATIONS**

I. **Introduction**

AXA seeks to compel the production of numerous documents containing communications over a 20-year period between the former German brokers of Immuno AG and attorneys representing Immuno AG, Baxter AG (the successor to Immuno AG), and Baxter International. The subject documents have been withheld by Baxter as privileged because they involve confidential communications by counsel with an agent of the client in connection with legal work then being performed by counsel.

The factual context of the challenged communications is set forth in the accompanying Declaration of Carl W. Shapiro and will not be repeated in any detail here. There is no question, however, that Jauch & Hübener (J&H), a prominent German brokerage firm that later became a German division of Aon, acted first as the agent for Immuno AG, then as the agent for Baxter AG after Immuno was acquired by Baxter, and finally for Baxter International, the plaintiff in this action. It is also undisputed that during the twenty or more years J&H worked for these companies, the companies' counsel viewed the brokers' insight and advice as essential to

counsel's work in overseeing the creation of a new international insurance program for Immuno and (later) in evaluating and pursuing coverage for Baxter AG and Baxter International for product liability claims involving Immuno products – largely under earlier policies not relevant to this action.

## II. CONFIDENTIAL COMMUNICATIONS SHARED BETWEEN COUNSEL AND THE CLIENT'S BROKERS ARE PROTECTED IF MADE FOR THE PURPOSE OF ASSISTING COUNSEL IN PROVIDING LEGAL ADVICE

### A. J&H Acted as a Key Agent for Immuno AG, Baxter AG and Baxter International for More Than Twenty Years.

Illinois law, which governs the scope of the attorney-client privilege here, is clear that when an attorney communicates on a legal matter with a third party agent of the client on a confidential legal matter, no waiver of the attorney-client communication occurs. Illinois Supreme Court Rule 201(b)(2), which concerns discovery and privilege, states that the attorney-client privilege protects "communications between a party *or his agent* and the attorney for the party[.]" 134 Ill. 2d R. 201(b)(2) (emphasis added). Accordingly, Illinois courts have repeatedly found that:

> [w]hen an agent communicates with the principal's attorney, the agent speaks as the client, or principal, and his or her communications are protected to the same extent as though the principal was speaking. . . . Generally, communications made to a legal advisor through one serving as an agent of the client will be privileged.

*Lama v. Preskill*, 353 Ill. App. 3d 300, 306 (2004) (citations omitted). Thus, the privilege applies when the agent hears or receives confidential communications between the attorney and client (*see People v. Doss*, 161 Ill. App. 3d 258, 261 (1987) ("The presence of an agent of the client in furtherance of the client's business . . . does not destroy the privilege.")); or when the attorney confers directly with the agent in the course of handling the client's legal affairs (*see Adler v. Greenfield*, 2013 IL App. (1st) 121066, at P44 (1st Dist. 2013) (communications

between client's estate attorney and bank serving as client's financial advisor about client's testamentary intentions are privileged). Only where a confidential communication is shared with a non-agent third party is the privilege placed in jeopardy. *See In re Marriage of Johnson*, 237 Ill. App. 3d 381, 393 (1992) ("Matters which the client intends his attorney to disclose to a third person (who is not the agent of either the client or the attorney) are not privileged.").

As detailed in the Shapiro Declaration and as further reflected in the challenged communications themselves, J&H acted first as the agent for Immuno AG in negotiating and obtaining a new international liability program for the company and advising the company's counsel charged with making sure that the new program would meet the company's needs. Then, after the new liability program went into effect, J&H assisted the attorneys of Immuno AG and its successor, Baxter AG, in their attempts to assess the coverage available to the company in connection with an anticipated influx of HCV infection claims involving Immuno factor concentrate products, with the brokers providing expert analysis of the earlier Austrian policies that comprised Immuno's old coverage program. Those earlier policies were considered at the insistence of Colonia Cologne (AXA's predecessor), the issuer of the new policy, which contended that the older policies (issued by another insurer and through other brokers) remained primary for any claims also covered by the new policy.

And finally, when the anticipated HCV claims involving Immuno products actually materialized – against Baxter AG in Italy and against Baxter International in the United States – the brokers were called upon to help present coverage claims under those policies and to provide the attorneys of each company with additional insight into the coverage provided by the old Austrian program. Thus, there can be no question that in each of these situations J&H acted as the agent of the company for which it was providing services. *See Lang v. Consumers Ins. Serv.,*

*Inc.*, 222 Ill. App. 3d 226, 232 (Ill. App. Ct. 1991) ("An agent is one who, acting under authority from another, transacts business for him, and a true agency requires that the agent's function be the carrying out of the principal's affairs.").

While it was not necessary for those agency relationships to be memorialized in written agreements (as discussed below, agency may be inferred from the facts), J&H's agency relationships were, in fact, confirmed by each of the retainer agreements that have been discovered relating to J&H's services. As set forth in the Shapiro Declaration, that agency relationship was expressed in the earliest (1989) retainer[1] and was reconfirmed in subsequent agreements prepared in 2003[2] and 2006.[3]

## B. Illinois Law Protects Confidential Communications Between the Client's Agent and the Client's Attorneys.

Despite this unequivocal agency relationship, AXA argues that the nature of the brokers' work for Immuno and Baxter was business-related and, therefore, any communication the brokers' had with the companies' counsel had to be for business, not legal purposes. But, as discussed below, it is not the nature of the *brokers'* work which is key here; instead, it is the nature of the work being performed *by counsel* which is central, as Illinois law recognizes that

---

[1] The 1989 written agreement with Immuno AG stated: "We hereby request that you [J&H] restructure our insurance coverage for the entire liability area. At the same time, we would also like to ask you to provide us with a detailed analysis of our remaining insurance coverage. . . . We hereby instruct and authorize you to represent our company with respect to the aforementioned responsibilities and areas." *See* Shapiro Declaration at ¶ 12.

[2] The 2003 written agreement with Baxter AG stated: "You have asked us to provide our services as an insurance broker for third party liability policies prior to 1990, so as to handle claims in connection with claims for compensation arising from HIV/HCV injuries in Italy." *See* Exhibit F to AXA's Motion.

[3] The 2006 written agreement with Baxter International stated: "You asked me to provide Aon Jauch & Hübener services as an Insurance Broker for third party liability policies of Immuno AG prior to 1990 so as to handle claims in connection with possible liability claims. This will involve the overall coordination of Baxter, the lawyer and the former insurance companies." *See* Exhibit H to AXA's Motion.

counsel are entitled to communicate with brokers on a confidential basis about the brokers' "business" activities on behalf of the client if those communications are reasonably required by counsel to perform their legal tasks. Thus, the fact that J&H was retained by Immuno AG and Baxter AG to act as an insurance broker for those companies does not in any way detract from the ability of those companies' attorneys to speak confidentially with the brokers about those brokerage activities if such communications informed counsel's advice to the client on related legal issues. *See American Colloid Co. v. Old Republic Ins. Co.*, 1993 U.S. Dist. LEXIS 7619, *1-5, 1993 WL 195270 (N.D. Ill. June 4, 1993) (finding communications between insurance broker and client's attorney regarding claims advocacy protected by privilege even though broker had historically advised client in obtaining insurance coverage, placed insurance for client and forwarded notices of claims and lawsuits against client to insurers).

Indeed, courts in Illinois and elsewhere have found in a variety of factual contexts that where an insurance broker acts as the client's agent, confidential communications between the broker and the client's counsel are protected if the insurance broker provides assistance to the client's attorneys regarding a legal matter. *See e.g. id.* at *2-3 (protecting communications between broker and counsel regarding carrier's declination of coverage to client); *Allianz Underwriters, Inc. v. Rusty Jones, Inc.*, 1986 U.S. Dist. LEXIS 24386 at *8, 1986 WL 6950 (N.D. Ill. June 10, 1986) (attorney-client communication shared with broker privileged because letter was seeking broker's knowledge of certain facts needed to assist attorney in rendering legal advice); *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 409 F. Supp. 2d 1180, 1181-82 (N.D. Cal. 2005) (revealing privileged communications to insurance broker of insured did not waive privilege when broker was present to further insured's interests and the broker served as a necessary advisor for coverage and claim issues); *Miller v. Haulmark Transp. Sys.*, 104 F.R.D.

442, 445 (E.D. Pa. 1984) (privilege extended to communications in the presence of the client's insurance agent, who was instrumental in securing disputed coverage and who could give information useful to the purpose of the meeting); *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F. Supp. 1007, 1009-10 (E.D. La. 1995) (when broker's involvement is "more than mere role-playing as an insurance broker" and broker receives communications between insured and counsel as "a conduit between the lawyer, the insured and insurer," communications fall within scope of attorney-client privilege).[4]

The case of *Allianz Underwriters, Inc. v. Rusty Jones, supra,* a Northern District of Illinois case cited by AXA, is instructive. In that case, the defendant Rusty Jones sought reconsideration of the court's prior ruling with respect to two documents – one a letter between the president of Rusty Jones and its outside counsel that had been copied to the company's principal insurance broker, and the second document containing handwritten notes reflecting the discussion during a conference call among the company's executives, outside counsel and insurance broker representatives. The court had originally ordered that both documents be produced: the letter because it appeared that it had been revealed to the broker for a business purpose and the notes because it was not clear why the broker had participated in the call. Upon reconsideration, however, the court reversed both rulings based on supplemental evidentiary submissions.

---

[4] AXA's suggestion that the privilege was somehow waived because several low- to mid-level J&H employees were involved in confidential communications is wrong on both the facts and the law. Factually, the only "low level" employees involved in any of the communications challenged by AXA were assistants and secretaries who were transmitting information to counsel on behalf of J&H principals (i.e., they were acting on behalf of the principal agents), and the courts have recognized that the necessary participation of such employees effects no waiver of privilege. *See Allianz Underwriters, Inc. v. Rusty Jones, supra*, 1986 U.S. Dist. LEXIS 24386 at *10 (inclusion of broker's secretary in meeting with attorney and client did not destroy privilege).

With respect to the letter, the court found that the confidential disclosure to the company's broker did not waive the attorney-client privilege because the broker had valuable expertise in the insurance field, exclusive access to the representatives of Rusty Jones' insurers, and had also been involved in the negotiation and administration of Rusty Jones' existing policies and thus "the letter was disclosed to Rusty Jones' agent for the purpose of obtaining legal advice in connection with disputes that arose between Rusty Jones and the plaintiff insurer in the case." 1986 U.S. Dist. LEXIS 24386 at *7-9. And with respect to the handwritten notes of the conference call, the court found them to be protected as well because (1) the purpose of the call was to consult with the attorneys concerning the interpretation and operation of the companies' insurance policies and (2) the brokers' participation was necessary to inform Rusty Jones and its counsel of the negotiation background and operational details of the policies under discussion. *Id.* at 9-10.

Unlike the brokers in *Allianz*, J&H had not been involved in the procurement of the policies it was asked to analyze and assist with, but like the brokers in *Allianz*, J&H had considerable experience and expertise that was relied upon by the companies and their attorneys, and J&H supplied that expertise and advice in connection with legal work being performed by counsel, including the performance of complex insurance analyses of the earlier policies.

AXA's argument that J&H's communications were not protected because the brokers were not part of each client's control group has no merit. Even if the control-group test articulated by *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 89 Ill. 2d 103 (1982) could somehow be applied to non-employee agents, the facts make clear that J&H fell within a "logical" extension of the *Consolidation Coal* test in connection with the companies' insurance matters as J&H was retained by the very persons charged with obtaining insurance and pursuing coverage

for claims against the Immuno and Baxter companies. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 192 F.R.D. 263, 267 (N.D. Ill. 2000) (applying the more restrictive Illinois control group test and holding that communications between outside counsel and a consultant, who was effectively part of client's control group, were privileged). Indeed, including J&H within the scope of protected communications between counsel and their clients' decision-makers would fall "squarely within the public policy articulated in *Consolidation Coal* [of] . . . protecting consultations with counsel by those who are the decision makers or who substantially influence corporate decisions . . . ." *Id.*

Here, J&H played a critical role in crafting the companies' legal strategies to obtain coverage for the factor concentrate claims faced by Baxter AG in Italy (and elsewhere in Europe) as well as the Second Generation claims facing Baxter International in the United States and therefore must be considered as part of any "control group" regarding insurance matters. *See Schlicksup v. Caterpillar, Inc.,* 2011 U.S. Dist. LEXIS 102099, at *6-7, 2011 WL 4007670 (C.D. Ill. Sept. 9, 2011) (attorney-client privilege applies if a consultant's communications were "necessary, or at least highly useful, for the effective consultation between the client and the lawyer."); *Trustmark Ins. Co. v. General & Cologne Life*, 2000 U.S. Dist. LEXIS 18917, at *16-18, 2000 WL 1898518, (N.D. Ill., Dec. 19, 2000) (protecting communications with client's agent who "served as an advisor to top management and was 'consulted for the purpose of determining what legal action the corporation would pursue'"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 244 F.R.D. 412, 420 (N.D. Ill. 2006) (communications with consultant (Ernst & Young) protected where consultant was retained to "conduct complex quantitative analysis and extensive information-gathering that was beyond" counsel's resources and necessary to enable counsel to provide legal advice on pending litigation).).

C. **The Provisions of J&H's Written Engagement Letters Were Produced by Baxter in Connection with the "Control" Issue Raised by AXA and Do Not Defeat any Privilege Assertions Here.**

AXA makes several illogical and unsupported arguments about the purported significance of the written agreements between J&H and the companies for which it provided services.

First, AXA argues that there can be no assertion of privilege in the absence of a written agreement. But, AXA cites no authority for such a proposition, and the proposition makes no sense on its face. Moreover, courts have recognized that an agent's role in challenged communications may be inferred solely from the circumstances surrounding the communications. *Cf. Mitchell Buick & Oldsmobile Sales, Inc. v. Nat'l Dealer Servs., Inc.*, 138 Ill. App. 3d 574, 582 (1985) (agency need not be expressed directly but can be implied from the specific circumstances at issue.); *Lang*, 222 Ill. App. 3d at 232 (agency can be shown by reference to the parties' intent, situation, and acts, and must be traced to the principal, if only by means of circumstantial evidence). Accordingly, it would not matter if Baxter were unable to produce operative written agreements in each time period in which J&H provided services. (As the Shapiro Declaration attests, however, most of the known written agreements *have* been found.)

Second, AXA argues that "one of the most important factors" in the privilege determination is whether the agent was retained by the attorney or by the client. Here, however, there is no question that each of the written agreements confirms the engagement of J&H by the *company*, not solely by the attorneys. Thus, even though the second (2003) agreement was executed on behalf of Baxter AG by the company's outside counsel (Knut Hansen), the

-9-

agreement makes clear that J&H was being hired to assist the company (including its counsel), as J&H was not being asked to act as "the broker" for the attorneys. In any event, courts do not rely on such narrow criteria in evaluating whether a particular communication to a party's agent is privileged; instead, the courts make clear that in making such as determination, the court must look at the totality of circumstances with respect to each specific communication to determine whether the purpose of the subject communication was legal and intended to be confidential. *See, e.g. In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).. And, the totality of circumstances here, as set forth in the Shapiro Declaration, demonstrates that the communications shared with J&H were in fact confidential and made to assist lawyers for both Immuno and Baxter in providing legal advice.

Indeed, the only reason why the contents of the J&H retainer agreements may be important to this litigation is to determine whether they contained provisions expressly giving Baxter the right to "control" the documents retained by J&H. While AXA raised the issue of Baxter's "custody and control" over the J&H documents in an earlier motion, AXA does not pursue that issue in its present motion. In any event the agreements that have been located (in both Baxter's and AXA's files) do not contain such contractual provisions.[5]

---

[5] AXA also claims that Baxter has not demonstrated any basis for its assertion that some of the documents listed on its privilege log constitute protected attorney work product. However, AXA requests the Court to review only one such document, which was inadvertently produced by the Lovells firm and has been clawed back by Baxter. As detailed in paragraph 38 of the Shapiro Declaration, Baxter believes that the document, which was prepared by Lovells attorneys, likely reflected an attorney-client communication but Baxter cannot say for certain to whom the document was directed. Nonetheless, given that the document was prepared in anticipation of the HCV litigation, the document constituted protected work product. *See Jaffe Pension Plan, supra,* 237 F.R.D. at 181 ("documents are protected by the work product privilege if they were prepared 'because of the prospect of litigation'").

III. **MOST OF THE CHALLENGED COMMUNICATIONS ARE NOT RELEVANT TO ANY CLAIM OR DEFENSE IN THIS LAWSUIT.**

A. **None of the Challenged Communications Address the Issues Identified by AXA.**

AXA claims that it needs the withheld communications to "ascertain how Baxter and its brokers construed the terms" of the 1990 Policy prior to its inception (i.e., during the so-called "placement period") and to "ascertain when, how and why Baxter allocated the losses" resulting from the Second Generation litigation among Baxter's various insurers. But, the Shapiro Declaration establishes that none of the communications are relevant to either issue and that few are relevant to any other defense or claim in this lawsuit. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to any nonprivileged matter that is "relevant to any party's claim or defense").

Federal courts in Illinois have made clear that it is AXA's burden to establish the relevance of each of the requested documents in a motion to compel. *See West v. Miller*, 2006 U.S. Dist. LEXIS 56243, at *6, 2006 WL 2349988 (N.D. Ill. Aug. 11, 2006) ("Despite the liberal breadth of discovery allowed under the federal rules, 'the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.'") (citations omitted). As pointed out in the Shapiro Declaration, neither Baxter nor Baxter's attorneys participated in any discussions with J&H on allocation issues relating to the Second Generation losses, nor are there any "placement" communications about the terms of the 1990 Policy. And, while the 1990 Policy is discussed in a few post-placement communications, most of the withheld communications with J&H involve the construction of the terms of earlier Immuno policies that are not at issue in this litigation. Accordingly, AXA has not provided any legitimate reason why it needs most of the documents withheld by Baxter, and AXA's motion should be denied on this basis as well.

B.  **The Court Should Curtail Further Discovery Into the Irrelevant Austrian Policies.**

The facts surrounding the communications challenged by AXA should demonstrate to the Court why Baxter has long contended that the earlier Austrian policies are entirely irrelevant to the determination of coverage under the 1990 Policy. And, while AXA has been permitted to engage in massive discovery relating to those policies – not because Judge Bucklo found those policies to be relevant but because she not want to address the relevance issue until after AXA had been permitted to take discovery[6] – it is respectfully submitted that further discovery into these issues should be curtailed if this Court truly wants to bring discovery to an end.

After UNIQA (the insurer that acquired AXA's former Austrian subsidiary) determined in 2009 that Baxter International was a stranger to the earlier Austrian policies, those policies – and the 1991 Side Letter purportedly relied upon by AXA – became irrelevant to this case. There is no conceivable way that coverage for Baxter International under the 1990 Policy could be affected by other policies to which Baxter was not a party; therefore, even if (as AXA contends) the Side Letter were construed to make the earlier policies "primary" to the 1990 Policy where they afforded coverage for overlapping claims asserted against insureds under the earlier policies, they can have no relevance here to claims brought by a party *not* insured under the earlier policies. Therefore, Baxter respectfully submits that the time has finally come to focus on the terms of the 1990 Policy itself, which contains no "other insurance" provision or

---

[6] See Judge Bucklo's Order denying Baxter's Renewed Motion for a Protective Order, Dkt. 248, at PageID# 2707: "A protective order that effectively knocks AXA's defenses out of the case before discovery would amount to the same thing as a premature ruling on the merits. AXA is entitled to conduct discovery on its defenses before being put to its proof."

any reference to the earlier Austrian policies, and that further discovery be permitted only if it relates to coverage for the Second Generation claims under the 1990 Policy.[7]

## IV. CONCLUSION

As demonstrated herein and in the Shapiro Declaration filed herewith, a number of different attorneys utilized the information and expertise of J&H to provide effective advice to their clients. Counsel's confidential communications with J&H relating to such advice should therefore be protected and AXA's Motion should be denied.

Dated: October 23, 2015

Respectfully submitted,

/s/ *Carl W. Shapiro*

Carl W. Shapiro, *Pro Hac Vice*
Teresa Z. Youhanaie, *Pro Hac Vice*
SHAPIRO, RODARTE & FORMAN LLP
233 Wilshire Boulevard, Suite 700
Santa Monica, California 90401
Telephone: (310) 319-5400
Facsimile: (310) 319-5401

Nader R. Boulos, P.C. (IL Bar No. 83306)
William T. Pruitt (IL Bar No. 6283779)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Baxter International Inc.*

---

[7] That being said, Baxter remains entitled to see how AXA evaluated Baxter's Immuno-related exposure in the Second Generation Litigation by reviewing, e.g., AXA's communications with its co-insurers, reinsurers and reinsured (UNIQA) in connection with that exposure. *See* Baxter's pending Motion to Compel such communications.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Opposition to AXA's Motion to Compel Production of Aon Documents was served on all counsel of record via the Northern District of Illinois, Eastern Division, ECF filing system, this 23rd day of October, 2015.

Dated: October 23, 2015

/s/ *William T. Pruitt*
Nader R. Boulos, P.C. (IL Bar No. 83306)
William T. Pruitt (IL Bar No. 6283779)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200