IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 11-cv-9131 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| AXA VERSICHERUNG, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant AXA Versicherung ("AXA") has filed a motion to compel Plaintiff Baxter International, Inc. ("Baxter") to produce certain documents. Motion to Compel Baxter to Produce All Communications with Dechert ("AXA's Opening Brief"), [ECF Nos. 344, 345]. Although AXA initially sought more than eighty documents, Baxter's subsequent production of the vast majority of the communications AXA was seeking narrowed substantially the scope of the parties' present discovery dispute. The only issue now before the Court is whether Baxter must produce the redacted portions of several memoranda written by one of its insurance coverage attorneys and a few emails to which the memoranda were attached when they were sent to Baxter and attorneys representing Baxter in underlying tort litigation. For the reasons stated below, AXA's motion [ECF Nos. 344, 345] is denied.

### I. BACKGROUND

This lawsuit stems from the settlement of a multi-district litigation ("MDL") involving product liability lawsuits brought against Baxter and other drug companies seeking damages for allegedly contaminated blood products. See *Baxter Int'l, Inc. v. AXA Versicherung*, 2014 WL

3583929 (N.D. Ill. July 18, 2014) for a thorough discussion of the facts underlying both the MDL and this case. Throughout the MDL, which the parties refer to as "the Second Generation Litigation," Dechert LLP ("Dechert") served as Baxter's defense counsel. At the same time, Baxter employed Shapiro & Dupont LLP (now Shapiro Rodarte & Forman LLP) (collectively, "the Shapiro firm") as its insurance coverage counsel. In this role, one of the Shapiro firm's attorneys, Carl Shapiro, wrote a memorandum titled "Settlement Options re 'Second Generation' Claims." During the drafting process, Mr. Shapiro produced several versions of the memorandum (collectively, "the Shapiro Memos" or "the Memos") that he emailed to Baxter and Dechert.

During discovery in this case, AXA issued requests for production that encompass both the Shapiro Memos and what Baxter refers to as "the cover emails" to which the Memos were attached. Baxter initially withheld these documents in their entirety. Later, Baxter produced all of them but with redactions. According to Baxter, it only redacted portions of these documents that constitute its insurance coverage counsel's privileged coverage analysis. The Court now must decide whether Baxter must produce the redacted portions of the Shapiro Memos and the cover emails.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response. FED. R. CIV. P. 37(a); *Vukadinovich v. Hanover Cmty. Sch. Corp.*, 2014 WL 667830, at *4 (N.D. Ind. Feb. 20, 2014). The court then must independently determine the proper course of discovery. *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, 2013 WL 505252, at *2 (N.D. Ill. Feb. 12, 2013). When doing so, the court has significant discretion.

2

*Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Ultimately, the party objecting to discovery bears the burden to show that the requested discovery is improper. *JAB Distributors, LLC v. London Luxury, LLC*, 2010 WL 4008193, at *1 (N.D. Ill. Oct. 13, 2010).

## III. DISCUSSION

Baxter argues that the attorney-client privilege and the work product doctrine protect the redacted portions of the Shapiro Memos and the cover emails. AXA contends that neither applies and that, in any event, Baxter has waived any protection that might have existed.

### A. The Illinois Attorney-Client Privilege

The parties' dispute with respect to the Illinois attorney-client privilege is narrow. Baxter asserts that it redacted from the Shapiro Memos and emails only material that is protected by the Illinois attorney-client privilege. AXA responds by arguing that the attorney-client privilege does not cover Baxter's communications with Dechert, its defense counsel in the underlying Second Generation Litigation, under settled Illinois law, and the fact that Baxter's insurance coverage counsel was involved in those communications for the purpose of providing insurance coverage analysis related to the underlying claims in the lawsuit Dechert was defending does not change the analysis. AXA relies on the Illinois Supreme Court's decision in *Waste Management, Incorporated v. International Surplus Lines Insurance Company*, 579 N.E.2d 322 (Ill. 1991), in support of its argument that the Shapiro Memos and related emails must be produced without redaction. Baxter reads *Waste Management* more narrowly than AXA does in this context and argues that decision supports its production of the redacted Memos and emails.

In *Waste Management*, the eponymous defendant and a related corporate entity ("the insureds") owned and operated five hazardous waste disposal sites. *Id.* at 324-25. The insureds were sued for personal injuries and property damage caused by their improper mitigation of toxic

wastes at one facility. *Id.* The insureds defended against and then settled those claims. *Id.* at 325. After that, the insureds sought indemnification from their insurers, which already had denied coverage, leading to more litigation. *Id.* During the insurance coverage action, the insurers sought the insureds' litigation files from the underlying lawsuit. *Id.* The insureds refused to produce certain documents, claiming in part that the Illinois attorney-client privilege protected them from production. *Id.*

The Illinois Supreme Court held that, in this situation, the attorney-client privilege had no application to the withheld portions of the underlying litigation file. *Id.* at 329. The Illinois Supreme Court's decision rested on two rationales, both of which were independently sufficient to justify the ruling. *Id.* at 327. The first was that the insureds' contractual duty to cooperate with their insurers, contained in their insurance policies, rendered any expectation of privilege unreasonable with respect to the communications. *Id.* at 327-28. The second was that the insureds and the insurers had a common interest in defeating or settling the underlying litigation and the communications were "of a kind reasonably calculated to protect or to further those common interests." *Id.* at 328-29.

As this discussion illustrates, the holding and logic of *Waste Management* only extend to communications concerning matters with respect to which an insured has a duty to cooperate or a common interest with its insurer. In *Waste Management*, the court "recognize[d] [an] insured's need to have confidential communication with counsel regarding insurance coverage." *LaSalle Nat. Trust, N.A. v. Schaffner*, 1993 WL 105422, at *6 (N.D. Ill. Apr. 6, 1993). That is why the court distinguished "between nonprivileged communications regarding the underlying litigation, and privileged communications regarding the coverage issues that could arise in a subsequent declaratory judgment action." *Illinois Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 913 N.E.2d

4

1102, 1108 (Ill. App. Ct. 2009). When interpreting *Waste Management*, courts consistently acknowledge this distinction and find that the attorney-client privilege protects communications about coverage issues with respect to which the insured and insurer have neither a duty to cooperate nor a common interest. *See, e.g., Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 408 (N.D. Ill. 2001) (holding that the Illinois attorney-client privilege protects an indemnitee's communications with its attorneys "to the extent that such communications deal with issues of indemnification"); *LaSalle*, 1993 WL 105422, at *6 ("Communications made for the purpose of pursuing defense and indemnity against the Insurers is, however, subject to the attorney-client privilege."); *Emcasco*, 913 N.E.2d at 1108 ("In sum, we conclude that *Waste Management* preserves the attorney-client privilege for communications between Emcasco and its attorneys regarding the coverage issues arising in this declaratory judgment action."). That is so even when the coverage issues arose during the underlying litigation. *See, e.g., Abbott*, 200 F.R.D. at 407; *Beloit Liquidating Trust v. Century Indem. Co.*, 2003 WL 355743, at *11(N.D. Ill. Feb. 13, 2003); *CSX Transp., Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555, 560 (N.D. Ill. 1999); *LaSalle*, 1993 WL 105422, at *6; *Emcasco*, 913 N.E.2d at 1108.

As a practical matter, attorneys may communicate with their clients about both issues related to the underlying litigation and issues related to insurance coverage. *Emcasco*, 913 N.E.2d at 1108. That is so even when parties hire separate coverage counsel. *Id.* The *Waste Management* court did not address communications made "for the purpose of both the underlying claims and the insurance issues." *LaSalle*, 1993 WL 105422, at *6. Yet courts have not interpreted *Waste Management* to require the production of coverage analysis merely because an attorney involved in the underlying litigation was privy to the analysis. Instead, in such instances, courts have continued to assess "the nature of the communication" at issue. *See*

5

*Emcasco*, 913 N.E.2d at 1108. Under this approach, if the communication contains only protected coverage analysis, it may be withheld; if it contains in part protected coverage analysis, that information may be redacted. *See, e.g., Abbott*, 200 F.R.D. at 408; *Beloit*, 2003 WL 355743, at *11; *Emcasco*, 913 N.E.2d at 1108.

The Court has reviewed *in camera* the Shapiro Memos and the cover emails. The Memos discuss extensively the underlying litigation, *i.e.*, the Second Generation Litigation. Much of the content of the Memos has nothing to do with coverage. For instance, the headings that appear on the first five or so pages (depending on the version of the Memo) are: "Introduction," "Current Status of Litigation," "The New Claimants," "The Plaintiffs' Lawyers," and "Market Shares." None of these sections discusses coverage issues and they were produced in their entirety. The ensuing few pages largely address similar issues. In this part of the Memos, Baxter redacted almost entirely two separate sections both titled "Insurance" and three lines in the "Germany and Italy" section. The final set of redactions is spread throughout the last third of the Memos, which discusses alternative settlement proposals for the Second Generation Litigation. As this description indicates, Baxter has not redacted text on a sweeping, unprincipled basis. The targeted nature of its redactions supports Baxter's contention that it was trying to distinguish between coverage analysis and other matters.

The Court's review of the redacted text indicates that Baxter succeeded in that effort. The redacted portions present Mr. Shapiro's analysis of what coverage Baxter may or may not have from its insurers for the Second Generation Litigation and how Baxter may or may not be able to ensure in the future that its insurers meet their coverage obligations. This analysis relates solely to matters with respect to which Baxter did not have a duty to cooperate and Baxter and AXA did not share a common interest. The redacted text in the cover emails describes,

references, or indicates Mr. Shapiro's assessment of the coverage analysis in the Memos. Thus, based on its *in camera* review, the Court has concluded that Baxter properly distinguished protected insurance coverage analysis from other information that is not protected under *Waste Management*.

AXA concedes that the Shapiro Memos, and presumably the cover emails, "may well have been an attorney-client communication that Baxter could withhold" if Dechert had not reviewed them. AXA Versicherung's Reply in Support of Its Motion to Compel Baxter to Produce All Communications with Dechert ("AXA's Reply"), [ECF No. 363], at 6.[1] But, AXA argues, Baxter's decision to share the Memos, and, again, presumably the cover emails, with Dechert "stripped any privilege" away. *Id.* at 4. As AXA admits, its argument "depends . . . on Dechert having seen the Shapiro Memo[s] . . . while defending Baxter." *Id.* at 6; *see also id.* at 4-5. Although AXA's Motion rises or falls on this premise, AXA does not cite any case holding that the Illinois attorney-client privilege protects the coverage analysis of an insured's coverage counsel unless and until the insured's defense counsel is privy to that analysis.

Rather, the case law indicates to the contrary. In *Emcasco*, the Illinois Appellate Court explained that "the location of the counsel's office" is not an issue under *Waste Management*. *Emcasco*, 913 N.E.2d at 1108. More directly on point, the court further said that there is "no reason why" the application of *Waste Management* should differ based on "whether separate coverage counsel is hired." *Id.* That means the Illinois Appellate Court understood the attorney-client privilege for coverage analysis to survive even when the insured's defense counsel

---

[1] The Court recognizes that it is citing to documents that were filed under seal in this case. The Seventh Circuit, however, has held "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). There is nothing in the Court's citations that reveals privileged matters, and the Court's citation to these documents waives no privilege.

7

provided the analysis. Similarly, in *LaSalle*, a district court concluded that, even when an insured's attorney sends a communication addressing both the underlying litigation and insurance issues, the latter information still is protected. *LaSalle*, 1993 WL 105422, at *6. This is consistent with courts' broad references to an insured's communications with "its attorneys" or "counsel." *See, e.g., Abbott*, 200 F.R.D. at 407-08; *Beloit*, 2003 WL 355743, at *11; *CSX*, 187 F.R.D. at 560; *LaSalle*, 1993 WL 105422, at *6. With this understanding of *Waste Management*, the mere fact that an attorney who is serving to some extent in the defense of the underlying action is involved in the communication or discussion of insurance coverage analysis does not necessarily have a determinative effect.

For all of these reasons, the Court finds that *Waste Management* does not mandate the production of the Shapiro Memos and the cover emails.

**B.    The Federal Work Product Doctrine**

The parties' dispute over the federal work product doctrine also is confined to one issue. Baxter claims that the work product doctrine protects the sought-after portions of the Shapiro Memos and the cover emails. AXA responds by arguing that the Memos and the emails are not federally-protected work product because they were not prepared in anticipation of litigation.

"'[P]rudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced.'" *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000) (quoting *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983)). To determine whether a document was prepared in anticipation of litigation, a court must assess "'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting *Binks*, 709 F.2d at 1119). If "'[s]ome articulable claim,

8

likely to lead to litigation'" arose and "served as the primary motivating purpose behind the creation of a document," then the work production doctrine will apply. *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795 (N.D. Ill. 2015) (quoting *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010)); *see also Kelley v. Lempesis*, 2015 WL 4720054, at *2 (N.D. Ill. Aug. 7, 2015).

AXA asserts that Baxter cannot show it reasonably anticipated litigation when Mr. Shapiro wrote the Shapiro Memos and the cover emails because AXA had not formally denied coverage at that time. AXA's Reply, [ECF No. 363], at 8. AXA does not cite any case law that supports this proposition. Courts have recognized that the denial of coverage often may constitute the pivotal point at which an *insurer* deviates from its ordinary course of business and begins to anticipate litigation. *Schwarz & Schwarz of Virginia, L.L.C. v. Certain Underwriters at Lloyd's London Who Subscribed to Policy No. NC959*, 2009 WL 1043929, at *3 (W.D. Va. Apr. 17, 2009). But courts also have concluded that, even with respect to an insurer's claim of work product, there is no bright-line rule requiring a formal denial of coverage. *Willis v. Allstate Ins. Co.*, 2014 WL 1882387, at *3 (S.D. Miss. May 12, 2014); *OneBeacon Ins. Co. v. T. Wade Welch & Associates*, 2013 WL 6002166, at *5 (S.D. Tex. Nov. 12, 2013); *Schwarz*, 2009 WL 1043929, at *3.

The first class action complaint that later became part of the Second Generation MDL proceeding was filed in mid-2003. Baxter says that, at that time, it provided notice of the lawsuit to AXA and sought coverage. According to Baxter's undisputed assertion, AXA "*refused* to acknowledge coverage for the Second Generation litigation and *refused* to defend Baxter in the lawsuit." Baxter's Response, [ECF No. 362], at 11 (emphasis added). Consistent with this fact, the redacted portions of the Shapiro Memos reveal that Baxter believed that, in the future, its

9

insurers might continue to refuse to defend Baxter and satisfy what Baxter believed to be their coverage obligations. The record now before the Court thus indicates that, as of 2005, when the Shapiro Memos were written and distributed, Baxter had an articulable claim against AXA that reasonably was likely to lead to litigation. That claim, arising from its insurers' continued refusal to acknowledge or defend the tort claims in the Second Generation Litigation, was the primary reason for the coverage analysis in the Shapiro Memos and the cover emails.

For all of these reasons, the Court finds that the work product doctrine protects the Shapiro Memos and the cover emails because they were prepared at a time when Baxter reasonably anticipated the possibility of litigation with AXA concerning its coverage obligation for the claims raised in the Second Generation Litigation.

C.  **Waiver**

AXA argues that, under Federal Rule of Evidence 502(a), Baxter waived the attorney-client privilege and the work product doctrine by selectively disclosing some of the redacted content in the Shapiro Memos. Rule 502(a) provides that disclosure of privileged material waives privilege in undisclosed materials when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." FED. R. EVID. 502(a). Under Rule 502(a), though, a waiver of undisclosed material occurs "only . . . if the non-disclosed documents are required to ensure that the presentation of information has been fair and not misleading." *Appleton Papers Inc. v. EPA*, 2012 WL 1079884, at *5 (E.D. Wis. Mar. 30, 2012), *aff'd sub nom. Appleton Papers, Inc. v. EPA*, 702 F.3d 1018 (7th Cir. 2012). "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that

could provide an important context for proper understanding of the privileged materials." 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.2 (3d ed.). As the Advisory Committee's note explains, "'subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation *in a selective, misleading and unfair manner.*'" *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2014 WL 174778, at *2 (N.D. Ind. Jan. 15, 2014); *see also RLIS, INC. v. Cerner Corp.*, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014); *Lawless v. Delaware River Port Auth.*, 2013 WL 180347, at *3 (E.D. Pa. Jan. 16, 2013); *Shionogi Pharma, Inc. v. Mylan Pharm., Inc.*, 2011 WL 6651274, at *5 (D. Del. Dec. 21, 2011).

The sole selective disclosure that AXA identifies as resulting in waiver under Rule 502(a) is a statement contained in a memorandum drafted by Richard Berkman, one of Baxter's defense attorneys at Dechert. In his memorandum, Mr. Berkman says, "Carl[ Shapiro's] view is that if we settle the Immuno exposure without paying anything for HCV exposure, we risk losing up to $10 million of insurance coverage for those cases." [ECF No. 345-1], at 2. Having reviewed *in camera* the redacted portions of the Shapiro Memos and the cover emails, the Court concludes that this statement does not constitute a selective, misleading disclosure. Mr. Berkman fully stated what he understood Mr. Shapiro's view to be. None of the redacted text reveals either that Mr. Shapiro communicated a different view to Mr. Berkman or that Mr. Berkman actually understood Mr. Shapiro to have a different view. To the extent the Shapiro Memos or the cover emails further reflect Mr. Shapiro's view, there are not inconsistencies that make Mr. Berkman's statement misleading.

AXA contends that, even if Baxter's selective disclosure were not misleading, fairness considerations still require a finding of waiver under Rule 502(a). There are several problems

11

with AXA's argument. AXA asserts that it "cannot discern the settlement advice Dechert provided Baxter without reviewing the Shapiro [Memos'] settlement advice that Dechert referenced." AXA's Opening Brief, [ECF No. 345], at 11. But Mr. Berkman's memorandum discussing Dechert's settlement advice already has been produced to AXA. Moreover, AXA has deposed Mr. Berkman about what advice he provided to Baxter. There is no basis to contend that AXA cannot figure out what advice *Dechert* gave to Baxter.

AXA further argues that it is being "deprived of [Mr. Berkman's] testimony" because he cannot explain what the risk of losing $10 million was. AXA's Reply, [ECF No. 363], at 11. Mr. Berkman's memorandum clearly describes the risk as the "risk" of losing "$10 million in Immuno's insurance" if Baxter settles "the Immuno exposure without paying anything for HCV." [ECF No. 345-1], at 30-31. So, it appears that AXA knows what risk Mr. Berkman was referencing. Mr. Berkman ultimately "take[s] exception" to one of Mr. Shapiro's proposals and concludes that "it is better to risk the loss of $10 million in Immuno's insurance than to settle a large group of HCV cases." *Id.* at 31. Mr. Berkman justifies his opinion by noting that a large group settlement of HCV cases "might invite even more HCV cases." *Id.* The deposition excerpts relied upon by AXA do not show that Mr. Berkman either was unable to explain what advice he gave to Baxter or the reasons why he gave that advice.

Finally, there is one additional, more fundamental point that undercuts AXA's argument. Under Rule 502(a), the fairness inquiry turns on whether the disclosed and the undisclosed material "ought . . . to be considered together." FED. R. EVID. 502(a). The question, then, is not whether it would be unfair to consider Mr. Berkman's testimony in its entirety without unredacted copies of the Shapiro Memos. Rather, the issue is whether it would be unfair to consider Mr. Berkman's statement in his memorandum describing Mr. Shapiro's view without

12

also considering the redacted portions of the Shapiro Memos. AXA largely misses this crucial distinction. As the Court explained above, Mr. Berkman's description of Mr. Shapiro's view stands on its own and is accurate. To consider it without the redacted text would not be unfair.

For all of these reasons, the Court finds that Baxter has not waived any privilege or protection under Rule 502(a) with respect to the Shapiro Memos and the cover emails.[2]

## IV. CONCLUSION

For the reasons stated above, AXA's Motion to Compel Baxter to Produce All Communications with Dechert [ECF Nos. 344, 345] is denied.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 13, 2016

---

[2] Because of this conclusion, the Court need not address the parties' dispute over whether Federal Rule of Evidence 502(a) provides special protection for opinion work product.