IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., | ) |
| Plaintiff, | ) Case No. 11-cv-9131 |
| v. | ) Jeffrey T. Gilbert |
| AXA VERSICHERUNG, | ) Magistrate Judge |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Baxter International, Inc. ("Baxter") has filed a motion to compel Defendant AXA Versicherung ("AXA") to produce certain communications between AXA and its co-insurers and reinsurers. Plaintiff's Motion to Compel Certain of AXA's Communications with Its Co-Insurers and Reinsurers under the 1990 AXA Policy ("Baxter's Motion to Compel"), [ECF Nos. 410, 414]. For the reasons stated below, Baxter's Motion [ECF Nos. 410, 414] is granted in part and denied without prejudice in part.

### I. BACKGROUND

This lawsuit stems from the settlement of a multi-district litigation ("MDL") involving product liability lawsuits brought against Baxter and other drug companies seeking damages for allegedly contaminated blood products. See *Baxter Int'l, Inc. v. AXA Versicherung*, 2014 WL 3583929 (N.D. Ill. July 18, 2014) for a thorough discussion of the facts underlying both the MDL and this case. Consistent with the parties' terminology, the Court will refer to the MDL as "the Second Generation Litigation." In this lawsuit, Baxter seeks indemnification from AXA for the costs of defending and settling HCV claims raised in the Second Generation Litigation. *Id.* at

*1. Baxter alleges AXA incurred its duty to indemnify through an insurance policy issued in 1990 by a predecessor of AXA to a company that Baxter later acquired. *Id.* The Court will call that insurance policy "the 1990 Policy." *Id.* AXA is what Baxter calls "the 'lead insurer' on the 1990 Policy." Baxter's Motion to Compel, [ECF No. 414], at 1. But the insured risk is shared by others. There are four co-insurers under the 1990 Policy. *Id.* And there are one or more reinsurers of AXA's risk under the 1990 Policy. *Id.*[1]

During discovery in this case, Baxter served requests for production on AXA that sought communications between AXA and its co-insurers and reinsurers. Request for Production No. 27 seeks: "All documents reflecting communications between AXA and reinsurers of the AXA Policy relating to claims made under that policy." Baxter International Inc.'s First Set of Requests for Production of Documents Propounded to Defendant AXA Versicherung AG, [ECF No. 414-2], at 8 (capitalization altered). Request for Production No. 31 seeks: "All documents reflecting communications between AXA and one or more of its co-insurers relating to the AXA Policy." Baxter International Inc.'s Second Set of Requests for Production of Documents Propounded to Defendant AXA Versicherung AG, [ECF No. 414-3], at 5 (capitalization altered).

AXA objected to producing any of the documents covered by these two requests. Baxter's Motion to Compel, [ECF No. 414], at 2–3. In late 2015, Baxter filed a motion to compel documents sought by Request Nos. 27 and 31. [ECF Nos. 290, 291]. Baxter limited its motion, though, to documents created before Baxter filed the present lawsuit. *Id.* After AXA told Baxter it did not have responsive pre-litigation documents, Baxter suggested tabling the motion. [ECF No. 321]. But the Court denied the motion without prejudice on the ground that "the better approach is to deny [the motion] outright based on the present record since the issues

---

[1] When the Court references AXA's co-insurers and reinsurers throughout this Opinion, the Court is referring only to AXA's co-insurers and reinsurers under the 1990 Policy.

2

will be presented somewhat differently in the future if any of them need to be addressed at all." *Id.*

Baxter's present motion to compel again asks that AXA be required to produce documents covered by Request for Production Nos. 27 and 31. But Baxter now has limited these requests both temporally and substantively. Baxter only seeks post-litigation communications. Baxter's Motion to Compel, [ECF No. 414], at 3. Also, Baxter only seeks two types of post-litigation communications. The first is: "AXA's notice(s) of the Second Generation Litigation to its co-insurers and reinsurers under the 1990 Policy, and the co-insurers'/reinsurers' response(s)." *Id.* at 4; *see also id.* at 11. The second is: "Correspondence from AXA to its co-insurers and reinsurers under the 1990 Policy in which AXA describes (a) the coverage available to Baxter under the 1990 Policy for its losses in the Second Generation [L]itigation or (b) any agreement or understanding between Baxter/Immuno and AXA/Colonia concerning coverage available under the 1990 Policy for HCV claims." *Id.* at 4; *see also id.* at 11. Baxter argues the relevance of the documents it is now requesting AXA be ordered to produce only became clear late in discovery. *Id.* at 1, 4. AXA objects to producing any of these communications with its co-insurers and reinsurers.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response. FED. R. CIV. P. 37(a); *Vukadinovich v. Hanover Cmty. Sch. Corp.*, 2014 WL 667830, at *4 (N.D. Ind. Feb. 20, 2014). The court then must independently determine the proper course of discovery. *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, 2013 WL 505252, at *2 (N.D. Ill. Feb. 12, 2013). When doing so, the court has significant discretion.

*Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Ultimately, the party objecting to discovery bears the burden to show the requested discovery is improper. *Deere v. Am. Water Works Co.*, 306 F.R.D. 208, 215 (S.D. Ind. 2015); *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 258 (E.D. Wis. 2013); *JAB Distributors, LLC v. London Luxury, LLC*, 2010 WL 4008193, at *1 (N.D. Ill. Oct. 13, 2010).

### III. DISCUSSION

As noted, AXA objects to producing the documents Baxter is seeking. AXA argues the notices to its reinsurers of the Second Generation Litigation are irrelevant to this case. AXA also contends the work product doctrine protects all correspondence between it and its co-insurers and reinsurers describing either the coverage available, or agreements or understandings regarding the coverage available. As a fallback position, AXA asserts that, if the Court orders it to produce any documents, AXA should be permitted to redact the amount of its reserves and related information from which the amount can be calculated because the reserve amounts are irrelevant and are work product, and the production of that information now, at the close of discovery and on the eve of a scheduled mediation, would give Baxter a tactical advantage to which it is not entitled after waiting years to request the reinsurance documents. Finally, AXA briefly mentions, but does not develop, arguments related to the undue burden created by Baxter's request, Baxter's delay in filing its Motion to Compel, and Baxter's failure to meet and confer before filing its current Motion.

**A. AXA's notices to its co-insurers and reinsurers may contain relevant and discoverable information.**

Federal Rule of Civil Procedure 26(b) defines the general scope of discovery. *Hurt v. Vantlin*, 2016 WL 3144992, at *1 (S.D. Ind. June 6, 2016), *objections overruled*, 2016 WL 3917138 (S.D. Ind. July 20, 2016) ("Federal Rule of Civil Procedure 26(b)(1) sets the standard

4

for the scope of general discovery . . . ."). Under that provision, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

According to Baxter, AXA's notices to its co-insurers and reinsurers are relevant to the present litigation for two reasons.[2] First, Baxter says the notices may contain admissions by AXA about the scope of coverage under the 1990 Policy and its obligations to Baxter. Baxter's Reply in Support of Its Motion to Compel Certain of AXA's Communications with Its Co-Insurers and Reinsurers under the 1990 AXA Policy ("Baxter's Reply"), [ECF No. 430], at 8. Second, Baxter argues the notices could be relevant to AXA's motive for denying coverage. Baxter's Motion to Compel, [ECF No. 414], at 6. More specifically, Baxter says AXA may be concerned about its reinsurers asserting a late notice defense. *Id.* In other words, Baxter's theory is that AXA may be fighting Baxter's claim because it fears that it may have no reinsurance to help spread its risk if Baxter prevails in this case. There is some support in case law for that theory of relevance. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132 (N.D. Ill. 1993).

AXA does not address Baxter's theory that the notices are relevant because they may include AXA's admissions regarding the scope of coverage under the 1990 Policy. In addition, AXA does not raise a work product or any other privilege objection with respect to the notices. The Court agrees with Baxter that the notices may contain relevant information not only because AXA does not rebut that contention, but also because it is supported by common sense. It also is consistent with a draft notice prepared by AXA that addressed, at least to some extent, the scope of coverage under the 1990 Policy. Because the Court accepts this theory of relevance, it need not address Baxter's other theory of relevance or AXA's arguments against that theory having to

---

[2] AXA appears only to object to production of its notices to its reinsurers.

do with AXA's purported fear that its reinsurers will raise a late notice defense. Accordingly, the Court overrules AXA's relevance objection to producing its notices of the Second Generation Litigation.

**B. AXA has not met its burden to show the work product doctrine covers all of its communications with its co-insurers and reinsurers after Baxter filed this lawsuit.**

The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). *Charvat v. Valente*, 82 F. Supp. 3d 713, 718 (N.D. Ill. 2015), *objections overruled*, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016).[3] The doctrine "is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). To that end, the doctrine protects documents prepared "in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Id.* at 618. To show documents were created in anticipation of litigation, a party must establish they were "prepared because 'some articulable claim, *likely* to lead to litigation, has arisen.'" *Id.* at 622 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)). Rule 26(b)(3) expressly includes documents prepared by or for a party's insurer as entitled to work product protection. FED. R. CIV. P. 23(b)(3)(A).

A document need not be prepared solely for the purpose of litigation to merit protection; rather, "the primary motivating factor in *preparing the document* must be the anticipation of

---

[3] AXA asserts "German law should govern AXA Versicherung's privilege claims." AXA Versicherung's Opposition to Baxter's Motion to Compel ("AXA's Response"), [ECF No. 421], at 8 n.3. But AXA also says it will "accede[] to using Illinois privilege law to decide Baxter's Motion without waiver of its rights under German law to privilege in other documents." *Id.* The Court interprets AXA also to be acceding to the use of federal law with respect to the issue of work product. *See Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795 (N.D. Ill. 2015) ("[C]ourts sitting in diversity consider the work-product doctrine . . . on the basis of federal law.").

litigation." *Heriot v. Byrne*, 257 F.R.D. 645, 664 (N.D. Ill. 2009). That means the work product doctrine does not shield from production "documents that are created in the ordinary course of business or that would have been created irrespective of litigation." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *see also Sandra*, 600 F.3d at 622; *Med. Assur. Co. v. Weinberger*, 295 F.R.D. 176, 183 (N.D. Ind. 2013).

The party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted. *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 258 (N.D. Ill. 2000); *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000). The party "must present for each document an explanation sufficient for the court to determine whether the party has discharged its burden." *Lislewood Corp. v. AT&T Corp.*, 2015 WL 1539051, at *3 (N.D. Ill. Mar. 31, 2015).

There is one preliminary matter that must be addressed before turning to the parties' main arguments. For the first time in its reply brief, Baxter argues AXA waived its work product objection by failing to raise it earlier. Baxter's Reply, [ECF No. 430], at 2. This argument appears nowhere in Baxter's opening brief. Instead, in that filing, Baxter asserts AXA's communications are not categorically protected. Baxter's Motion to Compel, [ECF No. 414], at 7–9. Baxter notes AXA failed to object to producing certain documents, but never mentions waiver in connection with that failure. *See id.* at 10. "[I]t is well-established that arguments raised for the first time in [a] reply brief are waived." *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011). In addition, it does not appear to the Court, on the merits, that AXA intentionally waived its work product argument. It implicitly raised that argument in 2015.

7

Therefore, on the record and arguments before it, the Court does not find AXA waived the protections of the work product doctrine.

The Court now turns to the merits of the parties' work product dispute. Baxter argues the documents it is seeking from AXA are not categorically protected by the work product doctrine and were created in the ordinary course of business. Baxter's Motion to Compel, [ECF No. 414], at 7–8. AXA does not dispute that the notices and responses to them fall outside of the scope of the work product doctrine. But AXA does argue the work product doctrine protects the other documents Baxter seeks—that is, correspondence from AXA to its co-insurers and reinsurers regarding the coverage available under the 1990 Policy. AXA's Response, [ECF No. 421], at 5.

AXA appears to argue that documents created after litigation begins deserve a higher order of work product protection than pre-litigation documents. AXA Verischerung's Sur-Reply in further Opposition to Baxter's Motion to Compel, [ECF No. 435], at 3-4. It cites one Seventh Circuit decision to support this theory, *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir. 1996). In that case, however, the Seventh Circuit did not create or recognize the existence of different standards depending on whether a document was created before or after litigation began. Instead, the court of appeals applied to post-litigation documents the very same work product principles it has used when confronted with pre-litigation documents. *See id.* at 976–77. The court of appeals recognized the subject matter of the documents at issue in that particular case generally concerned how the defendant intended to defend against lawsuits brought against it by the plaintiff. *Id.* at 977. Based on this conclusion, the Seventh Circuit found the relevant documents to be protected by the work product doctrine because they "were created in anticipation of litigation." *Id.*

8

In this case, AXA takes the position that all of its post-litigation communications with its co-insurers and reinsurers are protected work product. AXA first asserts these documents are "classic work product" because they address "the very matters in dispute." *Id.* Of course, a document whose subject matter relates to a matter in dispute may be work product. But AXA does not cite any case for the proposition that a document is work product solely because it addresses a disputed matter.

AXA also argues the documents are protected by the work product doctrine because they are post-litigation communications that are "in no ways a continuation of pre-litigation claims reporting." AXA's Response, [421], at 5. The fact that the documents were prepared after Baxter filed this case certainly may help AXA; for one thing, it means there cannot be any dispute about whether litigation was anticipated. But AXA has not shown the primary motivating factor for creating any (much less all) of the documents was the anticipation of litigation. Documents created after the inception of litigation are not work product *per se*. "To obtain the protection of the work product privilege," a party "must do more than establish that documents were prepared after" the filing of a "lawsuit." *Barela v. Safeco Ins. Co. of Am.*, 2014 WL 11497826, at *5 (D.N.M. Aug. 22, 2014); *see also Charvat v. Valente*, 82 F. Supp. 3d 713, 719 (N.D. Ill. 2015), *objections overruled*, 2016 WL 98570 (N.D. Ill. Jan. 8, 2016) ("[T]he commencement of the lawsuit does not automatically qualify a company's internal reports as work product.") (quoting *E.E.O.C. v. Commonwealth Edison*, 119 F.R.D. 394, 395 (N.D. Ill.1988)); *Meighan v. TransGuard Ins. Co. of Am.*, 298 F.R.D. 436, 443–44 (N.D. Iowa 2014) ("I find that litigation was reasonably foreseeable on March 13, 2012, when Armstrong first accused TransGuard of acting in bad faith. However, that is not to say that all documents created after that date are privileged, as some may reflect work performed in the ordinary course of

9

business, not in anticipation of litigation."); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 2005 WL 3690565, at *7 (C.D. Ill. Jan. 31, 2005) ("As a general ruling, I find that documents dated after the denial of coverage are privileged if but only if they reveal the conduct of litigation, the insurer's position and/or plan for that litigation, or if they discuss the issues involved in the litigation."); *In re Grand Jury Proceedings*, 2001 WL 1167497, at *14 (S.D.N.Y. Oct. 3, 2001) ("It is not enough that a document is created after the threat of litigation becomes real, but it is also necessary that the motivation for creating that document be the litigation.").

Therefore, it is not outcome determinative that AXA gave notice to its reinsurers only after Baxter filed this lawsuit and that all of their respective communications occurred after that point in time. In essence, AXA's argument is sound only if, after giving notice, none of the documents in dispute were created in the ordinary course of business. If AXA created any of the correspondence in the ordinary course of business, then those documents would not be protected by the work product doctrine. Although it is not uncommon for parties in litigation to agree that documents created after the commencement of litigation are not subject to discovery, the parties to this case did not adopt that convention, nor does the law require them to do so.

Baxter cites two cases in support of its position that communications between an insurer and a reinsurer may not be protected by the work product doctrine in some circumstances. In one, a defendant moved to compel the production of correspondence and information that the plaintiff insurance company shared with its reinsurer. *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 257 (W.D. Va. 1999). The plaintiff argued the work product doctrine protected a reinsurance loss notice and a general reinsurance report, both sent by one of plaintiff's employees to an employee of the reinsurer, and the reinsurer's response to the loss notice. *Id.* The court found "that these documents were not prepared in anticipation of litigation," but,

rather, "were created in the ordinary course of business under the contractual obligations between insurer and reinsurer." *Id.* at 258. Based on this conclusion, the court held the work product doctrine did not protect the documents. *Id.*; *see also Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 502 (N.D. Iowa), *aff'd*, 49 F. Supp. 3d 545 (N.D. Iowa 2014) ("Progressive itself admits that the documents were provided for case updates pursuant to the reinsurance agreements, or in response to specific requests, and included the matter's history, its present posture, current activity, assessments of coverage and liability issues, amounts paid and reserve, and plans for future handling. Those are all typical business purposes for the reinsurance industry.") (internal citation omitted).

The second case is *Allendale*, cited earlier. In that case, when assessing the reinsurers' work product claims, the court said, "It is the very nature of an insurer's business to investigate and evaluate the claims of its insured, and the fact that the investigation and evaluation continues after litigation commences is not conclusive proof that material has been created to aid in that litigation." *Allendale*, 152 F.R.D. at 136. After describing in detail the documents being withheld, the court concluded the "vast majority of the documents are simply the private musings of non-lawyer employees of a non-party, which on their face do not appear to be related to preparation for litigation other than in an incidental sense." *Id.* at 137. Finally, the court noted a "party claiming a privilege must present for each document 'a specific explanation of why the document is privileged or immune from discovery,' such that [the court] can determine whether the discovery opponent has discharged its burden," and criticized the reinsurers and the plaintiff for "provid[ing] no more than conclusory assertions that the material does constitute protectable work product." *Id.* (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992)). Although *Allendale* has been criticized on other grounds, its conclusion that

11

notices and other correspondence sent to reinsurers can be characterized as ordinary business documents when the facts require that result has not been criticized.

AXA relies primarily on the *Logan* case for the proposition that all its post-litigation communications with its co-insurers and reinsurers are protected work product. As discussed earlier, however, *Logan* cannot be read that broadly.

In this case, there is no dispute about whether there was an articulable claim likely to lead to litigation when AXA created the documents Baxter is seeking to compel it to produce. The litigation already existed. The central issue raised by the present motion is whether the litigation was the primary factor for creating the documents AXA is withholding, or whether, instead, they were created in whole or in part in the ordinary course of business. On that issue, the Court has nothing but bald arguments, assertions, and conclusions from AXA—and the undeniable temporal context in which the documents were created, namely, after Baxter sued AXA—to support AXA's claim that all of the documents are covered by the work product doctrine. That is not sufficient. Although some of the documents AXA is withholding may be protected by the work product doctrine, the Court is unable to conclude that any or all of the documents AXA is withholding were prepared in anticipation of litigation and therefore protected as work product with the information AXA has provided to date.

AXA has not, for example, provided Baxter or the Court with a log that describes in any detail the documents being withheld. It is unclear from the briefs whether AXA has translated any of the documents, most or all of which are not in the English language. If it has, then its failure to make a precise showing may be an indication that is unable to do so. If, however, AXA has not translated the documents and thought it could parry Baxter's arguments with broad, generalized thrusts, it is wrong.

The Court does agree with AXA, however, that Baxter's request for these documents comes late in the discovery process. That may not be a reason to deny Baxter access to those documents forever, but, with expert discovery yet to commence, no trial date looming, and mediation to begin in the near future, it is a reason for the Court to allow AXA to make a more fully supported argument in favor of its work product objection, if it can do that, so the Court can rule on the merits of the dispute rather than by default. If the parties do not resolve the case in their upcoming mediation, then the Court will confer with counsel and decide on an appropriate way for these issues to be presented for decision.

**C. Information about AXA's reserves**

AXA argues that, if it is required to produce the documents Baxter is seeking, then AXA should be permitted to redact the amount of reserves and related information from which that amount can be calculated. AXA's Response, [ECF No. 421], at 8. According to AXA, the amount and related information are privileged and irrelevant. *Id.* In response, Baxter argues, in one paragraph, that AXA has failed to show the reserve-related information is privileged. Baxter does not discuss AXA's relevance objection or address the case law cited by AXA in support of that objection. *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 1548959, at *2 (S.D. Ind. Apr. 7, 2015); *Front Royal*, 187 F.R.D. at 257. At this time, the Court is not convinced that, based on the facts of this case and the theories asserted by the parties, Rule 26 permits discovery of the amount of reserves and related information from which that amount can be calculated. If necessary, the Court can revisit this issue if, as, and when the work product issue is resubmitted for decision.

### D. AXA's Burden, Delay, and Local Rule 37.2 Arguments

AXA raises, in the briefest manner, three other arguments that potentially could justify denying Baxter's Motion to Compel. The first is burden. According to AXA, producing the communications Baxter is seeking would be burdensome because AXA would have to translate and review all of its communications with reinsurers and co-insurers, most or all of which are in German. AXA's Response, [ECF No. 421], at 1. AXA says this process would require significant expense and effort. *Id.* But AXA never develops this burden argument or supports its assertions with citations to case law or actual evidence. Instead, AXA's entire argument with respect to burdensomeness is condensed in a couple of sentences in the Introduction section of its brief.

As the party objecting to discovery on the basis of burdensomeness, AXA must "specifically demonstrate the burden that the discovery would impose." *Symons Int'l Grp., Inc v. Cont'l Cas. Co.*, 2015 WL 1279839, at *7 (S.D. Ind. Mar. 20, 2015). To satisfy this burden, AXA "must 'adequately demonstrate the nature and extent of the claimed burden.'" *Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*, 2014 WL 5529895, at *7 (S.D. Ind. Nov. 3, 2014) (quoting *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007)). AXA has not provided the necessary detail for the Court to assess whether it would suffer an undue burden if forced to produce the communications Baxter is seeking. AXA has done nothing more than say it would have to review some indefinite number of documents and translate them. It has not provided the Court with estimates of, for example, how many documents it needs to review, how many people would need to be involved in the review process, how long it would take to review the documents, and how much money it would

14

cost to complete the review. Again, if these arguments can be more fully developed, that can be done after the parties' mediation.

AXA also asserts—again in the Introduction section of its brief—that Baxter delayed seeking the documents it is now moving to compel. AXA's Response, [ECF No. 421], at 2. AXA says Baxter has known throughout this litigation that AXA was withholding post-litigation documents. *Id.* Baxter also has known, according to AXA, for more than three years about a letter drafted by AXA that AXA was preparing to send its reinsurers that Baxter now says is one of the reasons it believes AXA's communications with its reinsurers contain relevant information. *Id.* AXA complains that Baxter has not offered any excuse for its delay in seeking to compel production of AXA's post-litigation communications with its co-insurers and reinsurers. *Id.*

"The Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery—leaving the question of timeliness to the broad discretion of the district court to control discovery . . . ." *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1673563, at *2 (N.D. Ill. June 8, 2007). Baxter filed the present motion more than two months before the close of fact discovery. In addition, although fact discovery formally closes today, the parties have agreed to take two depositions after that date, if necessary. [ECF No. 423]. AXA has not claimed that, or explained why, requiring it to produce the documents Baxter is seeking will delay the resolution of this case. Further, Baxter has been pressing this issue for some time now. As described above, Baxter filed a motion seeking pre-litigation communications back in 2015 based on its assumption that most of the responsive documents would pre-date the filing of this lawsuit. The Court denied that motion after AXA represented that responsive pre-litigation documents did not exist. According to Baxter, it

15

learned somewhat recently that responsive post-litigation communications might contain relevant information. *See* Baxter's Motion to Compel, [ECF No. 414], at 3. Shortly after that supposed discovery, Baxter filed the motion now before the Court. Therefore, the Court is not convinced Baxter's motion should be denied solely because it did not file the motion earlier.

Finally, AXA asserts Baxter did not meet and confer before filing its motion, as required by Local Rule 37.2. AXA's Response, [ECF No. 421], at 8. AXA takes issue with Baxter's alleged failure to tell AXA that it would limit its discovery requests in the manner it has done in its Motion to Compel. *Id.* But the parties did meet and confer about whether AXA must produce the post-litigation documents encompassed by Requests to Produce Nos. 27 and 31. *See* Baxter's Motion to Compel [ECF No. 414], at 4. And Baxter's counsel informed AXA's counsel during a status hearing that it likely would further limit its requests in connection with its forthcoming motion.

Even though it would have been better for Baxter to discuss the contours of its narrowed requests with AXA during a meet and confer, the Court doubts that would have made a difference. Baxter represents that, during their email back-and-forth and meet and confer, AXA asserted privilege on a categorical basis. *Id.* AXA's response to Baxter's motion to compel clearly supports this characterization of AXA's position. As such, the Court does not agree that any deficiency in Baxter's attempt to comply with Local Rule 37.2 independently justifies denying its motion to compel. *See Amarei v. City of Chicago*, 2016 WL 3693425, at *1 (N.D. Ill. July 12, 2016) ("[I]t is apparent from the number of filings and the divergent views expressed therein that additional efforts at resolution would not have avoided court intervention. So, while the parties may not have strictly adhered to the mechanics of LR 37.2, the spirit of the rule largely was met.").

## IV. CONCLUSION

For the reasons stated above, Baxter's Motion to Compel Certain of AXA's Communications with its Co-Insurers and Reinsurers under the 1990 AXA Policy [ECF Nos. 410, 414] is granted in part and denied without prejudice in part. On or before April 10, 2017, or a different date if the parties agree, AXA shall produce its "notice(s) of the Second Generation Litigation to its co-insurers and reinsurers under the 1990 Policy, and the co-insurers'/reinsurers' response(s)." The Court will deal with the other issues advanced in Baxter's Motion if or when they are raised again along the lines discussed in this Memorandum Opinion and Order.

This case previously was set for a status hearing on April 11, 2017. [ECF No. 423]. That date is stricken and reset to April 12, 2017, at 10:15 a.m.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 30, 2017